JOHN A. MISKE AND MARY GAYDOS JOHNSON, COMPLAINANTS-APPELLANTS, v. JOSEPH HABAY, A MENTAL INCOMPETENT, ET AL., DEFENDANTS-RESPONDENTS, AND UNITED STATES FIDELITY AND GUARANTY COMPANY, DEFENDANT-APPELLANT.

Argued December 13, 1948—Decided February 14, 1949.

Mr. *Nicholas Martini* argued the cause for complainants-appellants.

Mr. *Marshall Crowley* argued the cause for defendant-appellant (Mr. *William P. Braun* on the brief).

Mr. *Conover English* argued the cause for respondent, I. Arthur Weiss, guardian *ad litem* of Joseph Habay, a mental incompetent (Messrs. *McCarter, English & Studer,* attorneys).

The opinion of the court was delivered by

HEHER, J. The essential question here is whether the old Orphans' Court had jurisdiction to entertain and adjudicate an account tendered by the putative guardians of a mental incompetent whose appointment as such guardians was void for want of notice of the proceeding to the incompetent.

There was an adjudication of mental incompetency on an inquisition issued out of the old Court of Chancery; and thereafter, on September 26, 1944, an order was entered in the Passaic Orphans' Court designating complainants as guardians of the incompetent. The appointees gave bond and undertook the function. The corporate appellant is the surety on their bond.

On October 31, 1946, the putative guardians filed their first intermediate account in the Orphans' Court. There were exceptions to the account. There was controversy also as to the validity of certain claims presented by the accountants as individuals against the incompetent, allegedly for moneys loaned and services rendered to and disbursements made on behalf of the incompetent prior to the adjudication of incompetency. The Orphans' Court thereupon appointed the respondent Weiss as guardian *ad litem* of the incompetent and directed the putative guardians to render a supplemental account, which they did on October 24, 1947, in the form of a second intermediate account. The guardian *ad litem* of the incompetent interposed a petition praying that a prior order allowing the accountants' claims

against the incompetent be vacated and the moneys paid thereon restored to the estate, and the appointment of appellants as guardians decreed to be void; whereupon the bill herein was filed.

The bill prays, *inter alia,* (a) that appellants' appointment as guardians of the incompetent be decreed to be valid, or, in the alternative, (b) that there be such appointment by the Chancellor, *nunc pro tunc* as of September 26, 1944, or as of the date of the filing of the bill; and (c) that the Chancellor take over the administration of the estate and appellants be given leave to account before him for their stewardship as *de facto* guardians. The defendant surety, by counterclaim, joined in the prayer for the assumption of jurisdiction by Chancery. By an amendment of the bill, the complainants seek a decree adjudging their appointment as guardians void, and permitting them to account in Chancery. The surety joins in this prayer. The contention is that, for lack of jurisdiction, a decree of the Orphans' Court approving their account would afford no protection to the accountants or their surety. The bill and counterclaim were dismissed. The learned Vice Chancellor found that the Orphans' Court had concurrent jurisdiction of the subject matter, and there was no reason for Chancery's intervention. We take a different view.

The appointment of complainants as guardians was void for failure of notice of that proceeding to the incompetent. There was no jurisdiction of the person. *Lommason v. Washington Trust Co.,* 140 *N. J. Eq.* 207 *(E. & A.* 1947). This is conceded. Complainants were not guardians *de jure* but *de facto* or *de son tort* accountable in Chancery as constructive trustees, subject to all the duties and liabilities of a guardian duly appointed. The settlement of such accounts is a part of equity's inherent exclusive jurisdiction over trusts and their administration. In the absence of a specific constitutional or statutory grant, the probate courts are not invested with this jurisdiction. *Van Epps v. Van Deusen,* 4 *Paige* 64 *(1853); Moody v. Bibb,* 50 *Ala.* 245 *(1873); Burch and Mundell v. State,* 4 *Gill & J.* 444 *(1832); State, ex rel. Kelly v. District Court,* 73 *Mont.* 84, 235 *Pac.* 751 *(1925); Starke v. Storm's Executor,* 115

*Va.* 651, 79 *S. E.* 1057 *(1913); Wortham v. John,* 22 *Okla.* 562, 98 *Pac.* 437 *(1908); In re Mize's Guardianship,* 193 *Okla.* 164, 142 *Pac. (2d)* 116 *(1943); Bailey v. Bailey,* 67 *Vt.* 494, 32 *Atl.* 470 *(1895); Campbell v. O'Neill,* 69 *W. Va.* 459, 72 *S. E.* 732 *(1911).*

 A guardian is one who legally has the care and management of the person, or the estate, or both, of the incompetent. A guardian *de facto* or *de son tort* is one who assumes to act as guardian without right or lawful authority. It does not matter in this regard whether or not, as in the case of a *de facto* guardian, there is color of authority for the exercise of the power. The jurisdiction to entertain or compel an accounting by the *quasi* guardian resides in equity and not in the probate court, unless the latter is clothed with the power either by the organic law or by statute. One acting as guardian of a lunatic under a void appointment is a trustee *in invitum,* accountable as such in a court of equity. In that case, there is no guardianship; it is as if there had been no appointment at all. In equity, by the mere operation of the law, a trust is charged upon the conscience of one who acts as guardian of an incompetent without legal right; and he is rendered accountable as a constructive trustee. *Pennington v. Exrs. of Fowler,* 7 *N. J. Eq.* 343 *(Ch.* 1848*); Boylan v. Deinzer,* 45 *N. J. Eq.* 485 *(Ch.* 1889*); Bailey v. Bailey, supra; Moody v. Bibb, supra; Story's Equity Jurisprudence (11th ed.) section* 1254. See, also, *Moses v. Moses,* 140 *N. J. Eq.* 575 *(E. & A.* 1947*).* The Orphans' Court had no such jurisdiction.

 The Orphans' Court was invested with jurisdiction to hear and determine all controversies respecting, *inter alia,* "the right of administration and guardianship, and the allowance of the accounts of executors, administrators, guardians or trustees," as therein directed, and to compel accountings by "executors, administrators, guardians and trustees under wills * * *." *R. S.* 3:1–2. The term "fiduciary," as used in the title, was defined to include "executors and administrators and guardians and trustees;" and "guardian" was defined to include "general, special, limited and testamentary guardians." *R. S.* 3:6–1. And there was a direction that the provisions of the

subtitle should not be construed to "affect, impair or limit in any way the inherent, exclusive or concurrent jurisdiction of the court of chancery or the chancellor, or the prerogative court or the ordinary." *R. S.* 3:6–2. Obviously, in this grant of jurisdiction, the statute had in view the accounts of guardians appointed by a tribunal having jurisdiction of the subject matter and of the person of the incompetent. There is no suggestion of a purpose to include the enforcement of a constructive trust charged upon the conscience of one whose appointment as guardian was void for want of jurisdiction of the person of the incompetent. The statute is not framed to comprehend this essentially equitable power. It does not include jurisdiction over fiduciaries by construction. This is a matter of purely equitable concern which requires the action of Chancery. *Woolsey v. Woolsey*, 72 *N. J. Eq.* 898 *(E. & A.* 1907*)*.

The Orphans' Court was a creature of statute, and its jurisdiction was confined to the subjects committed to its cognizance by the statute. Where it transcended its statutory jurisdiction, its acts passed for nothing. *Sherman v. Lanier*, 39 *N. J. Eq.* 249, 258 *(Prerog.* 1884*); In re Alexander*, 79 *N. J. Eq.* 226 *(E. & A.* 1911*)*. The Orphans' Court had no jurisdiction to declare a trust. *Koch v. Feick*, 81 *N. J. Eq.* 120 *(Ch.* 1912*)*. It is elementary that an order or proceeding in excess of jurisdiction is null and subject to collateral attack.

But the respondent guardian *ad litem* maintains that, even so, the county courts organized under the Constitution of 1947 have "full equitable powers" and the cause should therefore be remitted to the County Court and not to the Superior Court. The premise is faulty.

By *Article VI, section III, paragraph* 2, and *Article XI, section IV, paragraph* 3 of the *Constitution of* 1947, the jurisdiction possessed by the old Court of Chancery is now vested in the Superior Court. By *Article VI, section IV, paragraphs* 1, 4, the jurisdiction exercised by the Orphans' Court was transferred to the County Court, subject to alteration "by law as the public good may require." *Article VI, section IV, paragraph* 5 does not constitute a grant of "full equitable powers" to the county courts. It merely empowers the county courts

to "grant legal and equitable relief" in civil and probate causes "within their jurisdiction," so that "all matters in controversy between the parties may be completely determined;" and thus it confers upon the county courts the same jurisdiction in respect of such fiduciary accounts as was theretofore exercised by the Orphans' Court. Equitable relief is permissible only in causes within the jurisdiction of the county courts. Vide *Pyatt v. Pyatt*, 46. N. J. Eq. 285 (E. & A. 1889); *Woolsey v. Woolsey, supra*.

The assessment of counsel fees in favor of the respondent guardian *ad litem* against complainants and their surety is also reversed, without prejudice to a renewal of the application in the Superior Court upon the conclusion of the proceedings there.

The decree dismissing the bill of complaint is accordingly reversed; and the cause is remanded to the Superior Court for further proceedings in conformity with this opinion.

*For reversal and remandment:* Justices CASE, HEHER, BURLING, and ACKERSON—4.

*For affirmance:* Justice WACHENFELD—1.