In the Matter of the GUARDIANSHIP OF Ella Carson Thomas BOGAN, Incompetent.

John MILLER, Plaintiff in Error.

v.

Ella Carson Thomas BOGAN, Defendant in Error.

No. 41537.

Supreme Court of Oklahoma.

Feb. 20, 1968.

Robert P. Kelly, Bruce W. Gambill, Pawhuska, for plaintiff in error.

Spillers & Spillers, Tulsa, Hamilton Kane & Kane, Pawhuska, for defendant in error.

HODGES, Justice.

This appeal upon the original record from the District Court of Osage County, was lodged in this Court by John Miller, petitioner in the County Court of Osage County, and brother of Ella Carson Thomas Bogan, the alleged incompetent. Trial de novo was held in the District Court of Osage County upon Mrs. Bogan's appeal from the County Court, where a guardian of her estate had been appointed.

The trial proceedings consumed more than four hundred fifty pages of the record, and included testimony of twenty-two different witnesses. The District Court entered Findings of Fact and Conclusions of Law, and reversed the County Court following the trial de novo.

Petitioner asserts six errors in his Petition in Error, but he presents them as a single error. The alleged error, thus contracted, is that the trial court erred in vacating the order of the County Court appointing a guardian for the estate of Ella Carson Thomas Bogan, under the law and the evidence in this case. In support of this position the petitioner cites the following single statement of law from In re Guardianship of Prince, Okl., 379 P.2d 845, to-wit:

"The descriptive words 'mentally incompetent', 'incompetent,' and 'incapable,' as used in [58 O.S.1961 Sections 851–852] mean any person who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable or incapable, unassisted, of properly taking care of himself or managing his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

Petitioner's application for appointment of a guardian for the person, and estate of Mrs. Bogan was made under authority of 58 O.S.1961, §§ 851 and 852. As the appointment of a guardian of only the estate of Mrs. Bogan is here involved, the pertinent parts of the two sections are those which provide for appointment of a guardian of the estate of a person who is "* * from any cause mentally incompetent to manage his property, * * *" and "who * * * is incapable of * * * managing his property, * * *."

In In re Washam's Estate, Okl., 364 P.2d 896, we pronounced the following two standards in reviewing trial courts' judgments relating to the appointment of guardians, to-wit:

"A person's liberty and the right to control his property should not be taken away or withheld except for urgent reasons."

"The application for the appointment of a guardian for an incompetent is a special proceeding tried to the court, and on appeal the Supreme Court has power to, and will, review all the evidence for the purpose of ascertaining whether there is sufficient competent testimony to sustain the judgment."

We have diligently reviewed the record in this case and find ourselves unable to say that the judgment of the trial court is not supported by an abundance of competent evidence. We find no evidence indicating that there is any reason, either urgent or otherwise, to withhold Mrs. Bogan's right to control her own property.

Petitioner's position that Mrs. Bogan should have a guardian appointed for her estate is based upon his contention that she is mentally incompetent, incompetent, or incapable of proper management of her property, unassisted, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons. For this position to be within the rule pronounced in In re Guardianship of Prince, supra, the cause of the inability or incapacity which has resulted in her being subject to deceit or imposition must be grounded in the old age, disease, weakness of mind or some other mental or physical infirmity. Petitioner's position as to the cause of Mrs. Bogan's incapacity or inability is not clearly stated in his brief, but in view of the nature of the proof offered, it sufficiently appears that he believes the condition to exist as the result of one or more of the causes included within the rule, especially Mrs. Bogan's age, 84 or 85 at the time of the trial.

The factual contentions upon which petitioner's position is based are essentially as follows:

1. That she has not managed her affairs for many years; that she has received assistance from and has been influenced by both her former husband, Mr. Thomas, and her attorney, Mr. Charles R. Gray.

2. That Mr. Gray handles everything for her and when she wants any of her saving accounts, she goes to him as he has the books.

3. As a witness Mrs. Bogan incorrectly stated her income, and could not

remember many things about her assets and business dealings, as to payments on loans from her sister, rent and income from her assets, and existence of a mortgage securing the loan she had made to her sister.

4. That she did not receive adequate rents from her property; and that she did not have proper records therefor.

5. That she had an excessive amount in a checking account, $45,000.00.

6. That she has expressed an intention to assist her new husband, who is thirty-five years her junior, in a movie project which would cost $40,000.00.

7. That she could not identify a blank deposit slip on the bank in which she had the $45,000.00 checking account.

8. That she had a $1,200.00 plumbing bill.

9. That she was susceptible to flattery, and had given a young man a diamond ring worth $1,500.00.

10. There were "odd things" surrounding Mrs. Bogan's marriage to Mr. Bogan. He had changed his name; he is alleged to have married her to protect her; and he quit a potentially high paying position to marry her.

Concerning Mrs. Bogan's failure of memory on the witness stand, we must defer to the trial court, who observed her demeanor and was aware of her inflections and attitude and the circumstances of the questioning. The trial court acknowledged a "slight impairment of her memory and hearing, due to her age, but not enough to adjudge her to be incompetent." The trial court, also, recognized that Mrs. Bogan "may have been slightly confused or nervous." The court was afforded the benefit of an opinion of Mrs. Bogan as a witness from her legal and investment counsellor of twenty-five years, given on cross-examination by petitioner's counsel. Questioned about his out of court statements that Mrs. Bogan had not been a good witness in the County Court hearing and that all her testimony there had proved was that she had a "bad memory", Mr. Charles R. Gray explained as follows:

"* * * You have to give her time to think. You just can't jump her up with a Question and expect and Answer right now. You've got to give her time to think, and you can't change the subject on her quickly—just like any other person that's approaching 80 years of age."

Based upon his acquaintanceship and observation of Mrs. Bogan, Mr. Gray opined that she is now "capable and competent to handle her own business," and that it would be highly improbable that she would be imposed upon by artful and designing persons.

■ Much of the evidence produced and relied upon by petitioner to establish the incapacity or inability of Mrs. Bogan to manage her property, unassisted, strongly indicates that he has attributed undue and unrealistic significance to the word, "unassisted." That requirement does not relate to menial tasks. It does not require nonuse of expert or professional aid in management. There is no dire conclusions to be drawn from the fact that Mrs. Bogan received advice and assistance from her deceased husband, Mr. Thomas, and from her lawyer, Mr. Gray. It is significant, however, that most of those who dealt with her acknowledged that, while receiving such assistance from others, she made the final decisions regarding her property. The fact that Mrs. Bogan had delegated the keeping and retention of her books and records, and the preservation of her tangible assets to Mr. Gray, even though she made the ultimate decisions concerning them, is not necessarily the act of an incompetent or incapable person. Especially is this true when the duties and responsibilities were entrusted to her lawyer who had proved his trustworthiness and loyalty by over twenty-five years of devoted service in her interests. As the trial court observed, the use of and reliance upon her lawyer, especially one of Mr. Gray's qualities, for assistance and advice are acts of a

sound mind rather than indicative of mental infirmity.

Early in the trial Mrs. Bogan testified that she could not read with her "far sighted glasses", which she had on. Even the capacity to read the name of the bank on the deposit slip would not provide her with the information to identify it, and it would be difficult to understand how she could have identified the bank deposit slip under those circumstances.

Adjudication of incompetency, incapacity or inability properly to manage her property, unassisted would be unjustified on the basis that she had $45,000.00, uninvested, in a checking account. Acquisition of a $1,200.00 plumbing bill, a gift of a $1,500.00 diamond ring to a young man whose conduct she had appreciated and who had been employed in close relationship to her for several months, and expression of an intention to aid her new husband in a movie project, evidence of the potential of which was never mentioned in the record, are not necessarily acts of an incompetent. The presumption of competency, especially when fortified by the trial court's judgment thereof and when the facts as presented show full understanding of the consequences by Mrs. Bogan, negate the naked conclusion of petitioner that these acts are those of an incompetent.

The size of a plumbing bill, without inquiry as to the work done and the necessity for it, is not, per se, evidence of mismanagement of property.

Acts of generosity within the means and with full understanding of the donor are not to be interpreted as acts of the mentally infirm.

What petitioner has branded "odd things" about the marriage of Mrs. Bogan to her new husband, thirty-five years her junior, were explained. The explanations were susceptible of belief, and were considered by the trial court who observed the demeanor and testimony of the new husband. Those "odd things" were considered by the court insufficient as evidence to declare Mrs. Bogan incompetent to manage her property. It would be an unjustifiable rule of law which would adjudge a person incompetent to manage his or her property simply on the basis of the age of his or her spouse at the time of their marriage.

There is no competent and uncontroverted evidence in the record of this case that Mrs. Bogan has mismanaged her property or that she has been the victim of any artful and designing person. Only the failure of Mrs. Bogan's memory while a witness, would tend to justify, even remotely, a determination of her incompetency or inability properly to manage her property, and the facts of her actual management confirm the trial court's judgment and her counsel's explanation of her memory lapses as a witness.

The judgment of the District Court is affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, and McINERNEY, JJ., concur.